UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| NICHOLAS SILVEIRA,<br><br>Plaintiffs,<br><br>v.<br><br>NEY COUNTY, NEVADA, a political subdivision of the State of Nevada; SHERIFF SHARON WEHRLEY; UNDER SHERIFF BRENT MOODY; LIEUTENANT DAVID BORUCHOWITZ; and DOES 1-10,<br><br>Defendants. | Case No. 2:18-cv-00207-MMD-NJK<br><br>ORDER |

**I.     SUMMARY**

Plaintiff Nicholas Silveira brings this action under 42 U.S.C. § 1983 alleging civil rights claims of deliberate indifference under the Fourteenth Amendment of the United States Constitution[1] for purported inadequate medical care he received while a pretrial detainee as well as supplemental state law tort claims. Both Plaintiff and Defendants have filed competing motions for summary judgment on Plaintiff's claims. (ECF Nos. 33, 36, 35 (joinder).) Based on the undisputed facts of this case, the Court finds that Plaintiff fails to sufficiently establish any of his claims and therefore grants summary judgment in favor of Defendants.[2]

**II.     BACKGROUND**

The relevant facts are undisputed, unless otherwise noted.

///

///

---

[1] U.S. Const. amend. XIV.

[2] The Court addresses Plaintiff's claims only as asserted against the named Defendants—not DOES 1-10.

**A.     The Parties**

As relevant to this case, Plaintiff was diagnosed with Type II diabetes in 2008. (ECF No. 34-2 at 8.) The events upon which this action is based occurred while Plaintiff was detained in Nye County Detention Center ("NCDC") for a period of 5 days between January 21 and 26, 2016. (*Id.*) At the time of his detention Plaintiff was prescribed Levemir and Novolog for his diabetes. (*Id.* at 9, 17–18.)

Nye County is a political subdivision of the State of Nevada. It is responsible for hiring Nye County Sheriff's Office ("NCSO") and NCDC personnel. (ECF No. 34-4 at 3–4.) NSCO is responsible for training its officers. (*Id.*)

Defendant Sheriff Sharon Wehrly is the current Sheriff of Nye County and has held the position since January 2015. (*Id.* at 3.) Defendant Brent Moody was an Undersheriff at the time that Plaintiff was confined to NCDC. (ECF No. 34-2 at 12; ECF No. 34-3 at 4.) Defendant Lieutenant David Boruchowitz was a supervisor at NCDC during the period of Plaintiff's confinement. (ECF No. 34-2 at 12.)

**B.     Underlying Facts**

Plaintiff was booked into NCDC at approximately 11:17 p.m. on January 21, 2016. (ECF No. 34-8 at 12.) During booking, Plaintiff informed Boruchowitz that he was diabetic and needed his diabetic medication. (ECF No. 34-2 at 9.) Boruchowitz arranged with dispatch to have Plaintiff's medication delivered to NCDC and they were delivered. (*Id.* at 10.) Plaintiff also informed Boruchowitz and other NCDC personnel that he needed his blood glucose tested four times each day. (*Id.* at 10–11.) Plaintiff's doctors had directed him to test his blood glucose four to five times a day. (*Id.* at 10.) Plaintiff further informed NCDC personnel that he required diabetic meals. (*Id.* at 11.)

Plaintiff's medications provided directions on when and in what dosage they should be administered. (*Id.* at 10.) Additionally, NCDC had the equipment needed to perform the blood glucose testing. (*Id.* at 11.)

During Plaintiff's detention, NCDC personnel tested Plaintiff's blood glucose each time they administered Plaintiff's medications—in the morning, and at lunch and dinner.

(*Id.* at 11.) NCDC personnel also compiled with Plaintiff's request to be provided diabetic meals. (*Id.*) Between the breakfast, lunch, and dinner periods, NCDC personnel also provided Plaintiff with emergency diabetic snacks, such as orange juice and/or sandwiches, when Plaintiff became lightheaded and needed to increase his glucose levels. (*Id.* at 10–12; ECF No. 34-8 at 43–46.) From January 21, 2016, through January 25, 2015, Plaintiff received his medication, glucose testing, and meals regularly. (*Id.*; ECF No. 34-2 at 10–11; ECF No. 34-8 at 12–33. (jail logs).)[3]

At his deposition, Plaintiff testified that on the night of January 25, 2016, he asked a NCDC deputy to test his blood glucose before bed because he was feeling lightheaded. (ECF No. 34-2 at 11, 16.) Plaintiff stated that the deputy told him he could not do the test at that time because he was busy conducting head count of the inmates and indicated that Plaintiff being lightheaded was not his problem (*Id.*) Plaintiff affirmed having no knowledge whether the deputy ask anyone else to check his blood glucose. (*Id.* at 16.) The deputy is not a named Defendant in this lawsuit. Plaintiff also confirmed that he "didn't believe" there were any other instances where NCDC personnel did not respond to his requests. (*Id.*)

According to NCDC logs, on January 26, 2016, Plaintiff's blood glucose was tested around 8:00 a.m. and Plaintiff was provided 60 units of Novolog and 100 units of Levemir. (ECF No. 34-8 at 35.) The log reflects that Plaintiff's blood glucose was checked again around 1 p.m. (*Id.* at 36) However, Plaintiff was later found unresponsive in his bed before 5:00 p.m. and NCSO personnel called paramedics to NCDC. (*Id.* at 37; ECF No. 39-6 at 2, 4.) Paramedics arrived within roughly six minutes after the call was made and Plaintiff was transported to Desert View Hospital in Pahrump, NV ("DVH"). (ECF No. 34-8 at 46; ECF No. 34-2 at 18.)

///
///

---

[3] The record shows that, on January 24, in addition to being provided medication four times, Plaintiff's blood sugar was tested on several occasions because it appears Plaintiff's blood sugar level was low, but at least once Plaintiff reported not knowing what the issue was and he was provided "orange juice, nutrigrain bar, sandwich." (ECF No. 34-8 at 20–27.)

| | |
|---|---|
|1| Plaintiff's mother posted bail and Plaintiff was officially released from NCDC while |
|2| he was at DVH. (ECF No. 34-2 at 7, 14–15; ECF No. 34-8 at 46.) Plaintiff was transferred |
|3| from DVH by life flight to University Medical Center ("UMC"), where he remained in a |
|4| diabetic coma for two and a half days and stayed six days in entirety. (ECF No. 34-2 at |
|5| 18.) |

    **C.    Complaint and Briefs**

In his Complaint, Plaintiff alleges the following four claims for relief: (1) deliberate indifference based on in adequate medical care under the Fourteenth Amendment; (2) deliberately indifferent policies, practices, habits, and customs; (3) negligence; and (4) respondeat superior. (ECF No. 3 at 15–22.) Plaintiff seeks various forms of compensatory damages. (*Id.* at 22.)

Nye County, Wehrly and Moody moved for summary judgment on all claims against them. (ECF No. 33.) Boruchowitz filed a joinder to that motion the following day. (ECF No. 35.) Plaintiff filed his own motion for summary judgment—which amounts to a cross-motion—that same day (ECF No. 36) and Defendants responded (ECF No. 37, 38 (Boruchowitz's joinder)).[4]

## III.    LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could

///

///

///

---

[4]Along with the motions and Boruchowitz's joinder, the Court has considered the parties' respective responses (ECF Nos. 37, 39) and replies (ECF Nos. 40, 43).

4

find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. Moreover, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

Further, "when parties submit cross-motions for summary judgment, '[e]ach motion must be considered on its own merits.'" *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (quoting William W. Schwarzer, et al., *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 499 (Feb. 1992)) (citations omitted). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Id.*

**IV.    DISCUSSION**

The Court first addresses Plaintiff's § 1983 claims.

**A.    Plaintiff's Fourteenth Amendment Deliberate Indifference Claim Based on Conduct of Individual Named Defendants (Claim One)**

The same analysis that applies in the Eighth Amendment context applies to Plaintiff's asserted claims under the Fourteenth Amendment which stem from events that

allegedly occurred while Plaintiff was a pretrial detainee—the plaintiff must show that prison officials acted with deliberate indifference to his medical needs. *Castro v. County of Los Angeles*, 833 F.3d 1060, 1067–68 (9th Cir. 2016) (explaining that because a pretrial detainee may not be punished prior to conviction his claims of injury are brought under the Fourteenth Amendment's due process clause). In the Ninth Circuit, a pretrial detainee's claims for violations of the right to adequate medical care "must be evaluated under an objective deliberate indifference standard." *Gordon v. County of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018). This standard requires that a plaintiff proves: (1) the defendant made an intentional decision with respect to the conditions of plaintiff's confinement; (2) those conditions subjected plaintiff to a substantial risk of suffering serious harm; (3) defendant failed to take reasonable available measures to abate that risk; and (4) by not taking such measures to abate, the defendant caused the plaintiff's injuries. *Id.* at 1125. The third factor is assessed against whether a reasonable official under the same circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious. *Id.*

However, this objective standard must not be applied mechanically—by either a judge or jury. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). The court's analysis of objective reasonableness turns on the "facts and circumstances of each particular case." *Id.* (internal quotations and citation omitted). "A court must also account for the legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in th[e] judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security." *Id.* (internal quotations and citation omitted, alterations in original). "[M]ere lack of due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Gordon*, 888 F.3d at 1125 (internal quotations and citation omitted). Instead, a plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Castro*, 833 F.3d at 1071.

Plaintiff's first claim fails as to each named Defendant. While Plaintiff alleges the first claim against all Defendants, Plaintiff's response and motion for summary judgment make clear that his claim for deliberate indifference against Nye County, Wehrly and Moody is grounded in conduct which Plaintiff believes is grounded in a policy, practice or custom—not having medical personnel and allegedly having non-medically trained personnel on staff to administer medications/treatment (ECF No. 39 at 15–16; ECF No. 36 at 6–8; *see also* ECF No. 34-2 at 12 (testifying to the same)).[5] As such Plaintiff's allegations are best discussed within the scope of his second claim—for deliberately indifferent policies, etc. discussed *infra*.

To the extent Plaintiff seeks to maintain individual deliberate indifference claims against Nye County, Wehrly and Moody, the Court notes that Plaintiff concedes that neither Wehrly nor Moody were directly involved in his treatment as a detainee beyond being supervisors, policy makers, and leaders of department policies. (ECF No. 39 at 16; ECF No. 34-2 at 12; *see also* ECF No. 34-5 at 2 (Moody's declaration explaining Moody was not aware of Plaintiff's detention until after he left custody).) Thus, Plaintiff cannot establish any intentional conduct directed by these Defendants at Plaintiff that could objectively lead to an inference that these Defendants acted with deliberate indifference towards him. Additionally, to the extent Plaintiff alleges any claim of deliberate indifference to serious medical needs against Nye County not grounded in policy for alleged harm inflicted by the County's employees such claims fail under *Monell*. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, (1978) ("[T]he touchstone of the § 1983 action against a

///

///

---

[5]Plaintiff's argument on summary judgment does not delineate his arguments supporting his first as opposed to his second claim. (*See* ECF Nos. 36, 39.) Nonetheless, it becomes clear that Plaintiff's deliberate indifference claim is not anchored on any specific conduct of the named Defendants. (*See, e.g.*, ECF No. 39 at 15 ("Mr. Silveira is . . . more concerned about the indifferent policies and customs of NCDC and medical care medical care provided to him during his tenure at NCDC."); *id.* at 16 ("Mr. Silveira's care was a direct result of the policies and producers these supervisors, policy makers, and leaders of the department had in place governing the wats in which NCDC functioned."); *id.* ("Mr. Silveira does not have any recollection of whether Sheriff Wehrly was involved in administering any of his medications or providing him with any meals.").)

7

government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution.").

Plaintiff's deliberate indifference claim against Boruchowitz also fails. It is undisputed that Boruchowitz was a supervisor at NCDC during Plaintiff's confinement in January 2016. However, Defendants contend that Boruchowitz's conduct does not amount to deliberate indifference, but in fact shows the opposite. (ECF No. 37 at 13–14.) The reasonable juror would agree with Defendants.

The pertinent undisputed facts are that after Plaintiff informed Boruchowitz that he was diabetic, Boruchowitz ensured that Plaintiff's medication was delivered to NCDC to be provided to Plaintiff. Plaintiff also concedes that except on the occasion involving the unnamed-nonparty deputy, personnel who Boruchowitz supervised tested Plaintiff's blood glucose levels each time Plaintiff's medication was administered—as Plaintiff directed— and provided Plaintiff with regular and emergency diabetic meals. (ECF No. 34-2 at 11– 12, 16.) To the extent Plaintiff may nonetheless attempt to argue that personnel failed to comply with his requests—as suggested by his testimony (*see id.*)—it is notable that Plaintiff also testified that he does not know whether Boruchowitz had knowledge of NCDC personnel not responding to his requests. (ECF No. 34-2 at 13.) Such facts cannot establish anything akin to reckless disregard by Boruchowitz. There is no evidence supporting a conclusion that Boruchowitz knew of, or ratified, any constitutionally impermissible conduct by any NCDC personnel against Plaintiff.

Plaintiff's other arguments are based on purported policies, etc. which the Court now addresses.

### B. Plaintiff's Claim of "Deliberately Indifferent Policies" (Claim Two)

In his second claim, Plaintiff contends that all Defendants violated the constitution based on allegedly deliberate indifferent "policies, practices, habits, and customs." (ECF No. 3 at 17–20.) In response to these assertions Defendants preliminarily note that Plaintiff's claim is really a *Monell* claim because Plaintiff alleges that [a]ll Defendants, at all times relevant were acting under color of state law, as the functional equivalent of a

municipality providing medical care to inmates." (*Id.* at 18.) The Court agrees with Defendants on this threshold issue. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citation omitted) (explaining that official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent"). The Court accordingly deems Plaintiff's second claim as a *Monell* claim asserted only against Defendant Nye County.

A plaintiff can establish municipal liability only by demonstrating that the municipality had a deliberate policy, custom or practice that was the moving force behind the constitutional violation(s) he suffered. *Galen v. County of Los Angeles*, 477 F.3d 652, 667 (9th Cir. 2007) (citing *Monell*, 436 U.S. at 694–95); *see also Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) (citations omitted) ("[W]e have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal "policy" or "custom" that caused the plaintiff's injury."). "Similarly, an act performed pursuant to a "custom" that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." *Bd. of Cty. Comm'rs*, 520 U.S. at 404 (citations omitted).

Since *Monell*, the Ninth Circuit has explained that a plaintiff may recover under § 1983 on three different theories: commission, omission, or ratification. *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249–50 (9th Cir. 2010), *overruled on other grounds by Castro.* "Commission" refers to when a local government's implementation of policies or established customs (i.e., operating procedures) inflict constitutional injury. *Id.* at 1249. "Omission" amounting to a local government's policy may also lead to liability where the omission leads to a deliberate indifference to a constitutional right. *Id.* The omission standard is met where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* (quotation and citation omitted). "Ratification" relevantly refers to an authorized
///

policymaker's approval of a subordinate's unconstitutional conduct. *Id.* at 1250. This case concerns omission.

Plaintiff's second claim is particularly based on the absence of medical personnel on staff and additionally focuses on Plaintiff's contention that NCDC personnel were not adequately trained in providing medical care. (*See, e.g.*, ECF No. 3 at 17–20; ECF No. 39 at 17; ECF No. 36 at 8.) In other words, Plaintiff's first contention challenges Nye County's policy existing at the time of his pretrial detention which did not call for medical personnel on staff. In response to such challenge to the policy, Defendants argue, *inter alia*, that the constitution only requires that prison officials "provide a system of ready access to medical care." (ECF No. 33 at 17; ECF No. 43 at 14 (citing *Hoptowit v. Ray*, 682 F.2d 1237,1253 (9th Cir. 1982) *overruled on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995), *as recognized by Montijo v. Swaney*, 754 F. App'x 522 (9th Cir. 2018)).) Defendants argue that such a system was in place at the time of Plaintiff's detention in the form of referrals to outside physicians and facilities for emergencies and non-emergencies. (ECF No. 33 at 17; ECF No. 43 at 14; *see also* ECF No. 34-6 (NCDC and NCSO's written policies addressing emergency and non-emergency medical needs of detainees, including diabetic conditions, effective as of August 2013).) As to Plaintiff's latter argument, Defendants argue—without conceding—that to the extent the Court is inclined to grant summary judgment on the basis of inadequate training, Plaintiff has failed to provide competent evidence "that a constitutional injury would have been avoided had the municipality properly trained those officers." (ECF No. 33 at 18–19.) The Court agrees with Defendants on their latter point and does not consider it further. As to the former ground, the Court ultimately concludes that Plaintiff fails to provide causal evidence to support the claim.

Plaintiff appears to argue that the absence of medical staff—and consequential reliance on non-medically trained personnel—resulted in a lack of a proper response when

///

///

his blood sugar tested low (ECF No. 36 at 4, 8; ECF No. 39 at 17).[6] Plaintiff particularly argues that NCDC personnel's response when concerned about Plaintiff's low blood was to "guess[] at a remedy and decide[] to give him orange juice, a nutrigrain bar, and a sandwich." (*See, e.g.*, ECF No. 36 at 4.) The record supports that Plaintiff was typically provided with similar items to raise his blood glucose levels and that NCDC personnel did not know why his blood glucose was low. (ECF No. 34-8 at 19–22, 26, 30.) In any event, Plaintiff provides no evidence for a reasonable juror to conclude that the absence of medical staff caused Plaintiff's injury. Specifically, Plaintiff is required to establish a causal connection—that action, or inaction, amounting to reckless disregard by Nye County caused (or was the driving force) behind Plaintiff's injury (i.e., the diabetic coma). *See Bd. of Cty. Comm'rs*, 520 U.S. at 403. Here, there is simply no evidence of *the legal cause* of Plaintiff's diabetic coma. To be sure, aside from the hospital records stating the fact of hypoglycemia (ECF No. 39 at 10–11, 16; ECF No. 39-6 at 2), Plaintiff has provided no medical or expert opinion on the cause of his diabetic coma.[7]

///

///

---

[6]Considerably, two Ninth Circuit cases appear to support a position that at minimum under normal circumstances a jail or prison should be medically staff to address inmates' medical conditions. *See Hoptowit*, 682 F.2d at 1253 (citation omitted) ("The Eighth Amendment requires that prison officials provide a system of ready access to adequate medical care. Prison officials show deliberate indifference to serious medical needs if prisoners are unable to make their medical problems known to the medical staff."); *see also Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002), *overruled on other grounds by Castro* (internal quotation and citation omitted) ("In order to comply with their duty not to engage in acts evidencing deliberate indifference to inmates' medical and psychiatric needs, jails must provide medical staff who are competent to deal with prisoners' problems."). However, in the context of this case, such a rule appears arbitrary on its face where medical treatment merely involves providing medication in accordance with a prescription and checking blood glucose—ordinarily done by individuals suffering from diabetes without assistance by medical personnel. Moreover, if the Ninth Circuit intended to create a per se rule it would say so.

[7]Defendants also point out that Plaintiff was taken off the very medications that he was taking during his detention a couple months later—in March 2016—because Plaintiff's doctors determined that Plaintiff's glucose was under control. (ECF No. 33 at 6; ECF No. 34-2 at 17–18.)

11

Accordingly, the Court concludes that Plaintiff cannot support a conclusion that the purported policy of not having medical staff caused Plaintiff to suffer the diabetic coma under *Monell*. Plaintiff essentially asks this Court to speculate that having medical personnel test his blood glucose and provide his medications—as opposed to NCDC personnel—would have prevented his falling into a diabetic coma. However, speculation does not establish causation. The Court will therefore grant summary judgment for Defendants on Plaintiff's second claim.

### C. Plaintiff's State Law Claims (Claims Three and Four)

Pursuant to Nevada law, Plaintiff asserts tort claims for (1) negligence and (2) respondeat superior. (ECF No. 3 at 20–22.) The former is brought against all Defendants and the latter only against Nye County and Wehrly. (*Id.*) Defendants argue that these claims fail as a matter of law. (ECF No. 33 at 20; ECF No. 43 at 15.) The Court agrees with Defendants.

In Nevada, the elements for a claim of negligence are: (1) defendant owed a duty of care to plaintiff; (2) defendant breached that duty; (3) the breach was the legal cause of plaintiff's injuries; and (4) plaintiff suffered damages. *See, e.g.*, *Turner v. Mandalay Sports Entm't, LLC*, 180 P.3d 1172, 1175 (Nev. 2008).

Plaintiff's negligence claim is grounded upon two separate contentions. First, Plaintiff asserts that Defendants breached their duty to "exercise reasonable care in maintaining inmates with known medical conditions." (ECF No. 3 at 20.) Second, Plaintiff claims that "Defendants further breached their duties to Plaintiff when they failed to maintain adequate policies and procedures for inmates with medial conditions that need specific treatment." (*Id.* at 21.) In response to Plaintiff's negligence claim, Defendants argue that (1) Plaintiff cannot produce evidence that the named Defendants breached any purported duty owed him with respects to maintaining inmates with known medical conditions and (2) Plaintiff provides no evidence to establish causation. (*See, e.g.*, ECF No. 37 at 18–19.) The Court again agrees with Defendants—Plaintiff's claim fails on both grounds Defendants identify.

First, Plaintiff has not indicated the level of care he was owed as a pretrial detainee, aside from contending that treatment he received should have been provided by medical personnel or medically trained NCDC personnel and that Defendants are duty-bound as law enforcement officers. (ECF No. 3 at 20–21; ECF No. 36 at 9–10.) But surely Plaintiff does not rely on medical personnel or an individual with medical training to monitor his blood glucose and take his medication for day-to-day maintenance of his diabetes.

Second, as to the issue of causation, the Court's findings *supra* are equally applicable here. While Plaintiff references the fact that he was brought to the hospital with hypoglycemia (ECF No. 39 at 10–11, 16; ECF No. 39-6 at 2), he does not establish that any of the named Defendants' direct conduct caused his diabetic coma. Further, as found *supra* Plaintiff provides no evidence that the absence of medical personnel, as a policy, is *the legal cause* of his diabetic coma. Moreover, beyond the one request where the non-defendant deputy did not check Plaintiff's glucose because he was doing rounds the night before Plaintiff's emergency, Plaintiff testified that NCDC personnel otherwise responded to his requests:

> Q. And you are claiming that after you had alerted him that you needed your blood sugar checked that he ignored you?
> A. Yes.
> Q. Specifically what did he do or say?
> A. He says he is too busy. He was too busy to check my sugar. He had to do count.
> . . .
> A. And he walked away.
> Q. To your knowledge, did he ask anyone else, any of the other personnel from Nye County sheriff's office to check your blood sugar level?
> A. No.
> Q. Were there any other instances where you felt like Nye County Detention Center personnel did not respond to your request?
> A. I didn't believe so.

(ECF No. 34-2 at 16.)[8] Accordingly, the Court concludes that Plaintiff cannot support a claim of negligence against any of the named Defendants based on conduct or his policy arguments.

---

[8] To the extent Plaintiff testified on what his mother told him other inmates said occurred after Plaintiff was unconscious (ECF No. 34-2 at 16), the Court concludes such testimony constitutes inadmissible hearsay.

Plaintiff's respondeat superior claim asserted against Wehrly and Nye County is accordingly futile. (ECF No. 3 at 21–22.) An employer can only be found vicariously liable for the acts of his employees. *Nat'l Convenience Stores Inc. v. Fantauzzi*, 584 P.2d 689, 691 (Nev. 1978). To establish this claim, a plaintiff must prove: (1) the actor at issue is/was an employee; and (2) the action complained of occurred within the scope of the actor's employment. *Id.* Because Plaintiff's underlying tort claims fail, Plaintiff cannot support a claim of vicarious liability against Wehrly or Nye County. *See, e.g.*, *Wood v. Safeway, Inc.*, 121 P.3d 1026 (Nev. 2005) (explaining vicarious liability). Additionally, Nye County cannot be held liable under § 1983 on a respondeat superior theory. *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. at 403.

Therefore, Plaintiff's state law tort claims fail as a matter of law.

**V.    CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that Defendants' motion for summary judgment (ECF Nos. 33, 35) is granted.

It is further ordered that Plaintiff's motion for summary judgment (ECF No. 36) is denied.

The Clerk is directed to enter judgment accordingly and close this case.

DATED THIS 21st day of June 2019.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE